UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN ANTHONY BIDOT,

                       Plaintiff,

            -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
DEPARTMENT OF PROBATION and STEPHEN
LARSEN, in his individual and in his official
capacity, THOMAS BRANCO, in his individual
and in his official capacity, JAMES H. STITT,
in his individual and in his official capacity,
ANDREA NEUBAUER, in her individual and
in her official capacity, and JOHN DOES 1-10
in their individual and official capacities,

                     Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 19-3925 (SJF) (ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiff Juan Anthony Bidot brings this action against the County of Suffolk ("County"),

Suffolk County Department of Probation (the "Department"), Stephen Larsen, in his individual

and official capacity, Thomas Branco, in his individual and official capacity, James H. Stitt, in

his individual and official capacity, Andrea Neubauer, in her individual and official capacity,

and JOHN DOES 1-10 in their individual and official capacities (collectively, the "Individual

Defendants" and together with the County, "Defendants"), for violation of Title VII, 42 U.S.C.

§2000e, et seq. ("Title VII"), the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§

12101, et seq., 42 U.S.C. § 1983, 42 U.S.C. §1981, and New York State Human Rights Law,

New York Executive Law §§ 290 et seq. ("NYSHRL").  Currently before the Court, on referral

from District Judge Feuerstein, is Defendants' motion to dismiss pursuant to Federal Rule of

Civil Procedure ("Rule") 12(b)(6).  For the reasons set forth below, the undersigned respectfully

reports and recommends that Defendants' motion to dismiss be granted, in part, denied, in part.

## BACKGROUND

### A. Factual Background

The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiff has been employed by the Department since 1999. Compl. ¶ 16. Plaintiff has been assigned to several different units throughout his tenure with the Department. He was hired as a probation officer assigned to Criminal Court Supervision and then transferred to Gang Unit Supervision where he remained until 2001. Plaintiff was assigned to Criminal Court Supervision from 2001 through 2007. *Id.* From May 2007 through September 2018, Plaintiff was assigned to the Sex Offender Unit. *Id.* at ¶ 17. Plaintiff was promoted to senior probation officer in April 2018. *Id.* at ¶ 19. In September 2018, Plaintiff was transferred from the Sex Offender Unit to Pre-sentence Investigation. *Id.* at ¶ 40. Plaintiff identifies as a gay Hispanic male with light brown skin. *Id.* at ¶ 11.

Defendant, the County of Suffolk is a municipality of New York. *Id.* at ¶12. Defendants Larson, Branco, Stitt, Neubauer and Does 1-10 are employed by the County as supervising probation officers. *Id.* at ¶ 14. Defendant Larsen is a supervisor. *Id.* Defendant Branco is a Principal Probation Officer. *Id.* Defendant Stitt is also a Principal Probation Officer and Defendant Neubauer is acting Director. *Id.*

As a Probation Officer in the Sex Offender Unit, Plaintiff's duties included meeting with probationers in his office several times a month as well as conducting home visits to

probationer's domicile. *Id*. at ¶¶ 21, 22. On the days that Plaintiff made home visits he used a county car and to make and track home visits to his assigned probations. *Id*.

Plaintiff alleges that he disclosed to his co-workers that he was gay for the first time around September 17, 2017 – the date he was married. *Id*. at ¶ 25. According to Plaintiff, on September 21, 2017, Defendant Larsen requested to meet with Plaintiff and at the conclusion of the case load review meeting Larsen said "oh and by the way congratulations." *Id*. at ¶ 26. Plaintiff alleges that Defendant Larsen then smirked making a non-verbal sound and shook his head left and right in a "no" or "disapproval" gesture. *Id*.

According to Plaintiff, he began experiencing health related issue stemming from his work in the Sex Offender Unit and he made several verbal requests to be transferred from the Unit, beginning in September 2015. *Id*. at ¶¶ 27, 47. Plaintiff alleges that he was told by Defendant Stitt's that he would never get out of the Sex Offender Unit because he was Spanish speaking. *Id*. at ¶ 28. In February 2018, Plaintiff made a written request to be transferred, citing concerns for his health and well-being. According to Plaintiff, "Defendants knew that Plaintiff was suffering from a disabling condition and failed to help him or provide any treatment." *Id*. at ¶ 28. In June 2018, Plaintiff again requested a transfer from Defendant Stitt and was once again told that he would not be transferred because he was Spanish speaking. *Id*. at ¶¶ 29-30. Plaintiff repeated his request for a transfer to Defendant Branco who encouraged him to apply for the position. *Id*. at ¶ 32. In addition to alleging that the transfer request was denied because he was Spanish speaking, Plaintiff also alleges that he was denied a transfer as punishment for his announcement that he was gay. *Id*. at ¶ 50.

In August 2018, Plaintiff received a document entitled Statement of Charges and Notice of hearing signed by Defendant Neubauer (the "August 2018 Charges"). *Id*. at ¶ 36. This is the

sole factual allegation concerning Defendant Neubauer.  Plaintiff alleges that the charges were

brought against him by Defendant Larsen, working with Defendant Branco.  *Id*. at ¶¶ 34, 35.

Plaintiff alleges that the charges for inaccurate recording of time and failure to provide a fair

day's work were brought against him because he is Latino and gay, and that his co-workers were

not subjected to the same scrutiny.  *Id*. at ¶¶ 36, 37.  Plaintiff was suspended 30 days without pay

as a result of the charges.  *Id*. at ¶ 36.   In September 2018, upon return from his suspension, he

was transferred out of the Sex Offender Unit.  *Id*. at ¶ 40.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") and the New York State Division of Human Rights on August 27, 2018

alleging that the charges brought against him were discriminatory.  *Id*. at ¶ 39.  In his charge,

Plaintiff claimed "I am a 43 year old Latino male who is gay, I have worked for the Suffolk

County Probation department since 1999, most recently as Senior Probation officer, I believe I

have been discriminated against because of my sexual orientation and my national origin, in

violation of Title VII of the Civil Rights Act of 1964, as amended."  Schirmer Dec. Ex. B.  He

filed a second charge in March 2019, alleging that he had been retaliated against because,

following the filing of his original charge with the EEOC the charge brought against him by

Defendant Larsen was increased from 40 counts to 95 counts.  *Id*. at ¶¶ 42, 43.

Arbitration hearings were held in January 2019, March 2019 and April 2019.  *Id*. at ¶ 44.

Plaintiff claims to have learned for the first time during these hearings that the charges brought

against him were the result of a complaint filed Judge Kahn against him in October 2017.  *Id*.

Plaintiff alleges that Defendant Larsen waited to notify him of the charges until after Plaintiff

came out as gay.[1]  *Id.*    At the hearing, testimony was provided with respect to Plaintiff's claim

that he was suffering emotionally from his placement in the Sex Offender Unit.  In addition,

Plaintiff alleges that despite evidence presented at the hearing indicating the charges against him

are baseless, Defendants continue to move forward with the charges against him.  *Id*. at ¶ 70.

Based upon the foregoing set of facts Plaintiff has asserted six causes of action.[2]  Plaintiff

asserts: a Title VII claim for employment discrimination based upon race, color, national origin

and sex/gender against the County (Count I); a violation of the Fourteenth Amendment by all

Defendants – 42 U.S.C. § 1983 (Count II); a *Monell* claim against the County (Count III); a

claim of disparate treatment against all Defendants – 42 U.S.C. § 1981 (Count IV); a violation of

the ADA by all Defendants (Count V); and a discrimination claim pursuant to NYSHRL against

all Defendants (Count VI).

### B.  Procedural Background

Plaintiff filed his complaint on July 8, 2019.  On December 17, 2019, Defendants moved

to dismiss Plaintiff's claims pursuant to Rule 12 (b)(6).  In support of their motion to dismiss

Defendants rely upon their Memorandum of Law in Support of Motion to Dismiss ("Def.

Mem.") as well as the Declaration of Drew W. Schirmer dated October 11, 2019 ("Schirmer

Dec.") attaching exhibits.  Plaintiff opposes the motion and relies upon, Plaintiff's Memorandum

of Law in Opposition to Defendants' Motion Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl. Opp.").

By Order dated December 18, 2019, this motion was referred to the undersigned by Judge

Feuerstein.

---

[1] The time line of this allegation is incorrect.  Based upon Plaintiff's earlier allegation Defendants learned he was gay in September 2017, before the complaint was made against him by Judge Kahn in October 2017.  *Id*. at ¶ 25.

[2] In the Complaint, Plaintiff asserts claims against the Department, as well as claims against the County. By Stipulation of Discontinuance entered on December 17, 2019, Plaintiff agreed to discontinue all claims against the Department.  ECF. No. 13.

**DISCUSSION**

**A.  Standard of Review - Rule 12(b)(6)**

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and

internal quotation marks omitted).  "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough."  *Id.* (quoting *Global Network*, 458 F.3d at 156).  "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint."  *Id. (quoting Global Network*, 458 F.3d at 157)).  In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Global Network*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

**B.  Materials the Court May Consider on this Rule 12(b) Motion**

In connection with the motion to dismiss, Defendants have submitted three exhibits, the summons and complaint in this action, Schirmer Dec. Ex. A, EEOC charges dated October 16, 2018, *id*. Ex. B, and EEOC charges dated March 9, 2019.  *Id*. at Ex. C.  Plaintiff has taken the position that the Court must disregard each of these exhibits for purposes of the motion to dismiss.  Pl. Opp. at 9.

As discussed above, "[t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it."  *Global Network,* 458 F.3d at 155.  Thus, in adjudicating a motion under Rule 12(b), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the

7

complaint or incorporated by reference, and to matters of which judicial notice may be taken."
*Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

With respect to Exhibit A, Plaintiff is plainly mistaken that it would be improper for the Court to consider the complaint when evaluating Defendants' motion to dismiss. Indeed, the Complaint is the operative pleading. Next, with respect to the EEOC charges filed by Plaintiff, it is well settled in this Circuit that the Court may take judicial notice of the EEOC charge for purposes of the motion to dismiss. *See, e.g., Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 587 (S.D.N.Y. 2017) (court may take judicial notice of EEOC complaints); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 (E.D.N.Y. 2013) ("Although plaintiff's EEOC Charge was submitted by defendant, the '[c]ourt takes judicial notice of [p]laintiff's EEOC charge on a motion to dismiss.'") (citing *Morris v. Broadridge Fin. Servs., Inc.*, 10CV1707, 2010 U.S. Dist. LEXIS 132708, 2010 WL 5187669, at *3 n. 2 (E.D.N.Y. Dec. 14, 2010)); *Jenkins v. St. Luke's—Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 U.S. Dist. LEXIS 105866, at *19 , 2009 WL 3682458 (S.D.N.Y. Oct. 29, 2009). "Because plaintiff's EEOC Charge is 'a public document filed in an administrative proceeding, and is integral to plaintiff's [discrimination] claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on' a motion to dismiss." *Jordan*, 928 F. Supp. 2d at 591 (citing *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y.2010)). Accordingly, this Court will consider all exhibits submitted by Defendants for purposes of this motion to dismiss.

## C.  Motion to Dismiss

### 1.  Sovereign Immunity

Defendants contend that the Eleventh Amendment and sovereign immunity bars a suit against the County. Def. Mem. at 10-11. Plaintiff argues that the County is a municipal corporation and therefore is not entitled to Eleventh Amendment immunity. Pl. Opp. at 11. Defendants have not responded to Plaintiff's position in their reply memorandum, apparently conceding this point.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has made clear for over a century "that the Constitution does not provide for federal jurisdiction over suits against non-consenting states." *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003) (citations omitted). "As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald,* 518 F. App'x 12, 13 (2d Cir. 2013) (citations omitted). "Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State, one of its agencies or departments or a state official acting in his or her official capacity." *Colvin,* 2014 U.S. Dist. LEXIS 85678 (citing *California v. Deep Sea Research, Inc*., 523 U.S. 491, 502, 118 S. Ct. 1464, 140 L. Ed. 2d 626 (1998) ("[A] state official is immune from suit in federal court for actions taken in an official capacity") (citation omitted)). Additionally, the Supreme Court has made clear that, "States are protected by the Eleventh Amendment while municipalities are not." *Will v. Michigan Dept. of State Police*, 491 U. S. 58, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (citing *Monell*, 436 U.S. at 690, n. 54).

It is undisputed that the County is a municipality and not a state.  Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss the claims against the County on the basis of sovereign immunity be denied.

### 2.  Title VII, § 1983 and § 1981 Claims (Counts I, II, IV)

In Counts I, II, and IV Plaintiff alleges that the County and Individual Defendants (Count II and IV only) discriminated against him on the basis of race, color and sex/gender.  Defendants move to dismiss Plaintiff's Title VII claims set forth in Count I of the complaint arguing that Plaintiff's "conclusory assertions lack sufficient detail to support his discrimination claims on account of his membership in one or more protected classes."  Def. Mem at 12.[3]  Similarly, Defendants argue that Plaintiff's §1983 and §1981 claims against the Individual Defendants are vague and conclusory.  Def. Mem. at 18.[4]  Defendants do not move to dismiss Plaintiff's claims of disparate treatment in Count IV against the County on this basis.  Plaintiff responds that he has met the pleading standard in an employment discrimination case because "Plaintiff is only required to provide Defendants fair notice of the claims."  The Court considers Plaintiff's claims under Title VII, § 1983 and § 1981 together in determining the sufficiency of Plaintiff's factual allegations, since the "same framework and pleading standard" govern all of these statutes. *Awad v. City of New York,* No. 13-cv-5753 (BMC), 2014 U.S. Dist. LEXIS 63234, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014).

---

[3] Defendants argue that Plaintiff's claims against the Individual Defendants under Title VII must be dismissed because Title VII does not impose liability on individual defendants.  Count I of the Complaint, however, is brought solely against the County and does not name the Individual Defendants.

[4] Plaintiff has also asserted a discrimination claim under the NYSHRL (Count VI).  Defendants have not moved to dismiss Count VI on the basis of vagueness, however, the Court notes this analysis would apply to those claims as well.  *See, e.g., Lumhoo v. Home Depot United States*, 229 F. Supp. 2d 121, 136 (E.D.N.Y. 2002) (New York state employment discrimination laws are analyzed using the same framework as Title VII claims).

"A plaintiff who claims sex discrimination in public employment in violation of the Fourteenth Amendment's Equal Protection Clause may bring suit pursuant to 42 U.S.C. § 1983." *Miranda v. S. Country Cent. Sch. Dist.,* No. 20-CV-0104, 2020 U.S. Dist. LEXIS 89788, 2020 WL 2563091, at *6 (E.D.N.Y. May 21, 2020) (citing *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019)). The basic pleading elements of such claims, whether brought under Title VII or § 1983, are similar: a plaintiff claiming disparate treatment under either statute must plausibly allege that he suffered an "adverse employment action" taken "because of" her sex. *Id.* A §1983 claim, however, can be brought only against an individual who is personally responsible for the discrimination and thus the statute does not permit vicarious liability. *Id.* (citing *Littlejohn v. City of New York,* 795 F.3d 297, 314 (2d Cir. 2015)).

### a. Pleading Standard for Discrimination Claims

"Under *Iqbal* and *Twombly*, . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86 (2d Cir. 2015). Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), "dismissal is nevertheless appropriate where the plaintiff 'failed to allege even the basic elements of a discriminatory action claim.'" *Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (quoting *Patane v. Clark,* 508 F.3d 106, 112 n.3 (2d Cir. 2007) (per curiam)); *see also De La Pena v. Metropolitan Life Ins. Co.,* No. 13-2852-cv, 552 Fed. Appx. 98, 2014 U.S. App. LEXIS 1760, 2014 WL 308005, at * 1 (2d Cir. Jan. 29, 2014) (holding that a dismissal of an employment discrimination claim "for failure to allege facts showing a plausible inference of

11

discrimination is wholly consistent with Swierkiewicz"). "The sine qua non of a . . . discriminatory action claim . . . is that 'the discrimination must be because of '" race. *Patane*, 508 F.3d at 112 (emphasis in original) (quoting *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)); *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) ("[T]he sine qua non of a . . . discriminatory action claim under Title VII is that the discrimination must be because of the employee's protected characteristic.") (citation and internal quotation marks omitted).

   "Therefore, to avoid dismissal, a plaintiff must allege facts supporting 'a facially plausible inference that the [d]efendants' actions were motivated by [discriminatory] animus.'" *Jones v. City of New York*, 14-CV-0826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951 (quoting *De La Peña v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)); *see also Idlisan v. N. Shore-Lone Island Jewish Health Sys., Inc.,* No. 13-cv-2345 (SJF) (GRB), 2014 U.S. Dist. LEXIS 71578, 2014 WL 2157540, at *6-7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claims because "the complaint fails to plead any facts linking defendant's [actions] to [plaintiff's] race [or] national origin"). "Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss." *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 U.S. Dist. LEXIS 139007, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which we could infer that the defendants possessed a discriminatory . . .

12

motive are . . . insufficient to survive a motion to dismiss."); *Yusuf v Vassar College*, 35 F. 3d 709, 713 (2d Cir. 1994) (naked assertions of racial motivation will not suffice).

Since direct evidence of discrimination is rare, "courts examine a variety of factors to evaluate whether there exists a permissible inference of discriminatory intent." *Tubo v. Orange Reg'l Med. Ctr.,* No. 13-CV-1495, 2015 U.S. Dist. LEXIS 139254, 2015 WL 5945853, at *7 (S.D.N.Y. Oct. 13, 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." *Blair v. Brooklyn Transportation Corp*., No. 17-CV-0383, 2018 U.S. Dist. LEXIS 54718, 2018 WL 1581974, at *5 (E.D.N.Y. Mar. 30, 2018) (quoting *Littlejohn*, 795 F.3d at 312). "Such circumstances can include 'actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus.'" *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (citing *LaSalle v. City of N.Y*., 13-CV-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015)).  Additionally, the Court may consider the totality of the relevant facts, including allegations of discrimination that do not rise to the level of adverse employment actions, to shed light on Defendant's motivation. *Vega*, 801 F.3d at 88 (citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)).

### b.  Discriminatory Animus

In his first, second and fourth causes of action, Plaintiff contends that all Defendants unlawfully discriminated against him because he was denied reassignment and brought up on misconduct charges.  Compl. ¶¶ 81, 82, 91, 92, 107.  Defendants argue that these claims must be

dismissed because Plaintiff fails to provide any factual allegations supporting his claim of discrimination.  Def. Mem. at 12-14.  Plaintiff responds by pointing out that "he was repeatedly denied transfers out of the Sex Offender Unit due to being Latino and Spanish speaking and then subsequently pretextual charges were put forth against him once he came out as gay." Pl. Mem at 14.  Thus, despite the somewhat confusing allegations in the Complaint, it appears Plaintiff is claiming racial discrimination with respect to the denial of his transfer requests, and sexual orientation discrimination with respect to the August 2018 Charge.

The only specifics offered by Plaintiff in support of his discrimination claims are that (1) in September 2017 "at the conclusion of the case load review meeting Supervisor Larsen said 'oh and by the way congratulations."  Supervisor Larsen then smirked making a non-verbal sound and shook his head left to right in a 'no' or 'disapproval' gesture," Compl. ¶ 26, and (2) that in February and June of 2018 he was told "he would never get out of the Sex Offenders Unit because he was Spanish speaking."  *Id*. at ¶ 28.

"[T]he plaintiff's claim 'must offer more than conclusory statements' and 'the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff because of the plaintiff[']s protected characteristic." *Harris v. NYU Langone Med. Ctr.,* No. 12 Civ. 454, 2013 U.S. Dist. LEXIS 99328, 2013 WL 3487032 (S.D.N.Y. July 9, 2013) (internal citation omitted); *see also Samuel v. Bellevue Hospital Center*, 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs

14

because of an employee's . . . protected characteristic."); *Briggs v. SCO Family of Servs.*, No. 16-CV-3882 (JFB)(SIL), 2019 U.S. Dist. LEXIS 24528 (E.D.N.Y. Feb. 13, 2019) (complaint dismissed because no allegations linking adverse employment action to membership in a protected class).

Plaintiff claims he was denied a transfer because he was Latino and Spanish speaking. He alleges that he was told in February and in June 2018 that he was never going to be transferred because he was Spanish speaking. Compl. ¶¶ 28, 30. Defendants argue that this allegation is insufficient to support Plaintiff's claim of discrimination because it "fails to acknowledge the fact that he was the only Spanish-speaking Probation Officer in a Unit that supervises a number of probationers who are only Spanish speaking, as a legitimate business decision." Def. Reply at 5. While that may be true, resolution of factual disputes regarding why Plaintiff was not transferred are not appropriate at the Rule 12(b)(6) stage. *Zappa v. Town of Hempstead Sanitary Dist.,* No. 7, No. CV 17-39 (JMA) (ARL), 2018 U.S. Dist. LEXIS 7628 at *12, 2018 WL 1702002 (E.D.N.Y. Jan. 16, 2018), adopted by, 2018 U.S. Dist. LEXIS 58281, 2018 WL 1701949 (E.D.N.Y. Mar. 31, 2018) (denying motion to dismiss based on Defendants' justification for the employment action). Plaintiff's allegations, at the pleading stage, while thin support a claim that he was denied a transfer because he was Latino.

Next, with respect to Plaintiff's claim that he was served with the August 2018 Charges because he was gay, Defendants argue that these allegations do not plausibly state a discrimination claim due to the lack of temporal proximity of Defendants' awareness of his membership in these classes and the charges against him. Eleven months passed between Defendants learning Plaintiff was gay and the August 2018 charges. In the interim Plaintiff was promoted to senior probation officer. Compl. ¶ 19. The issue of temporal proximity typically

arises in the context of a retaliation claim. Though a causal connection may be alleged indirectly by showing temporal proximity between the protected activity and the adverse employment action, the Supreme Court has noted that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).  However, the Second Circuit has not established a specific delay that defeats an inference of causation. *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554-55 (2d Cir. 2001) (listing cases in the context of Title VII retaliation).  Under both federal and state case law, where no additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity. *Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 U.S. Dist. LEXIS 92623 at *28, 2015 WL 4393163 (S.D.N.Y. July 15, 2015); *see also Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85-86 (2d Cir. 1990) ("delay of three months was fatal to a showing of causation"); *Rivera v. Orange County*, No. 10 CV 9134, 2013 U.S. Dist. LEXIS 30847, 2013 WL 812016, at *11 (S.D.N.Y. Mar. 5, 2013) ("[C]ourts in this district have generally inferred causation when fewer than six months elapsed between the two events.").  Applying this standard to the facts alleged here, Defendants learned that Plaintiff was gay eleven months before the adverse action, well beyond the short window contemplated.  Moreover, Plaintiff's argument that Defendant Larsen learned of the Complaint against Plaintiff in October 2017 but "waited to investigate and give notice to Plaintiff that they disagreed with his job performance until nine months later, after Plaintiff came out as gay," Pl. Opp. at 15, is belied by Plaintiff's earlier allegation tat Defendants learned that Plaintiff was gay in September 2017, before the complaint was made.

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the

Defendants arising out of the August 2018 Charges be dismissed pursuant to Rule 12(b)(6).

### 3. Retaliation Claims (Counts I & III)

Plaintiff asserts retaliation claims against the County as part of his Title VII claim and

also as part of his § 1983 claim for municipal violations.  In Count I Plaintiff alleges that "once

Plaintiff protested such unequal and unlawful treatment Defendant County retaliated against him

by creating and continuing his harmful placement, suspending him without pay, subjecting

Plaintiff to more and greater charges and other wrongful acts."  Compl. ¶ 84.  In Count III,

Plaintiff claims that Defendants retaliated against him for his protestations about race, color and

gender discrimination.  Compl. ¶¶ 97, 99.  Defendants move to dismiss these claims arguing that

the allegations of retaliation are vague and conclusory (Def. Mem. at 18) and that the alleged

retaliatory behavior occurred before the protected activity.  Def. Reply at 11.  Plaintiff argues

that he engaged in protected activity when he filed a Charge of Discrimination with the EEOC

on August 27, 2018 and March 1, 2019.  Pl. Opp. at 20.

To establish a prima facie claim of retaliation "a plaintiff must show: (1) the employee

was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee

suffered an adverse employment action; and (4) there was a causal connection between the

protected activity and the adverse employment action." *Marquez v. Starrett City Assocs.*, No. 13-

CV-2362 (LDH) (LB), 2017 U.S. Dist. LEXIS 161800 (E.D.N.Y. Sept. 30, 2017) (citing *Sarno*

*v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).  "These statutes

prohibit retaliation against any employee who makes a complaint against her employer regarding

any practice made unlawful by these statutes."  *Ruhling v. Tribune Co.*, 2007 U.S. Dist. LEXIS

116.  Where the plaintiff fails to plead a direct link between a grievance and retaliatory action,

the plaintiff can demonstrate a causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn,* 795 F.3d at 319.

Here, the latest adverse employment action alleged, the August 2018 Charges, were brought prior to Plaintiff's filing of the charges before the EEOC, thus they could not have been brought in retaliation for the protected activity. Moreover, Plaintiff was transferred out of the Sex Offender Unit in September 2018, a transfer he very much desired. Thus, rather than facing retaliation after the filing of the charge, Plaintiff received the transfer he had been waiting for. Accordingly, the undersigned respectfully recommends that Plaintiff's retaliation claim be dismissed.

### 4. Discrimination Under §1983 (Count II)

In Count II of the complaint, Plaintiff alleges that the County and the Individual Defendants discriminated against him based upon his race, color and gender in violation of the Fourteenth Amendment. Compl. ¶ 88. As discussed above, this claim must be limited to Plaintiff's failure to transfer claim, because Plaintiff has failed to allege facts supporting his claim that the August 2018 Charges were motivated by discriminatory animus. Defendants moved to dismiss Count II as asserted against the County on the basis of vagueness and sovereign immunity, and those arguments have been discussed above. However, "a municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cty. Water Auth.,* 757 F.3d 31, 62 (2d Cir. 2014). Thus, this Court respectfully recommends that Count II of the Complaint be dismissed as to the County.

18

With respect to Plaintiff's discrimination claims against the Individual Defendants under Section 1983, to the extent Plaintiff asserts claims against the individual defendants in their official capacities, these claims must fail because they are duplicative of the claims asserted by Plaintiff's against County. *See Medrano v Margiotta*, CV 15-3097 (JMA) (ARL), 2017 U.S. Dist. LEXIS 23387, 2017 WL 886986 (E.D.N.Y. February 16, 2017); *Gazzola v. County of Nassau*, No. 16-cv-0909, 2016 U.S. Dist. LEXIS 142566, 2016 WL 6068138, at *4 (E.D.N.Y. Oct. 13, 2016) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.") (citations and internal quotation marks omitted) (collecting cases); *Berlyavsky v. N.Y. City Dep't of Envt'l. Prot*., No. 14-CV-03217, 2015 U.S. Dist. LEXIS 133647, 2015 WL 5772266, at *18 (E.D.N.Y. Aug. 28, 2015) ("To the extent that Plaintiff asserts §§ 1981 and 1983 against individual municipal employees in their official capacity, such claims should be dismissed as 'duplicative and redundant' of the claims against the City of New York."), report and recommendation adopted as modified on other grounds, 2015 U.S. Dist. LEXIS 133102, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015), and aff'd, 671 Fed. Appx. 836, 2016 U.S. App. LEXIS 22585, 2016 WL 7402667 (2d Cir. 2016).  Accordingly, the Court respectfully recommends that Plaintiff's §§ 1981 and 1983 against the Individual Defendants in their official capacity be dismissed.

With respect to the claims brought against the Individual Defendants in their personal capacity, "a prerequisite for claims under § 1983 against individual supervisors is the personal involvement of the individual in the alleged constitutional deprivation." *Falu v. Cty. of Orange*, 2020 U.S. App. LEXIS 17332, 2020 WL 2846610 (2d Cir. June 2, 2020).  "A supervisory defendant is personally involved where he participated directly in the alleged violation, failed to

remedy the wrong after being informed of it, created the policy under which the violation took place, or allowed an extant policy to persist or was grossly negligent in supervising those who committed the acts, or demonstrated deliberate indifference by failing to act on reports that violations were occurring." *Id*.

First, with respect to Defendant Neubauer, the only allegations concerning this defendant are that she signed the August 2018 Charges.[5]  Compl. ¶ 36.  There are no factual allegations indicating that Defendant Neubauer participated directly in the alleged violation, failed to remedy the wrong after being informed of it, or created the policy under which the violation took place.  Similarly, with respect to Defendant Larsen, who is alleged to have smirked disapprovingly at Plaintiff's marriage, the only participation in any adverse action concerning this defendant arises out of the August 2018 Charge.  *See, e.g., id.* at ¶¶ 34, 37, 42, 44.  Because this Court finds that Plaintiff has failed to allege that the August 2018 Charge was motivated by discriminatory animus because of the lack of temporal proximity between the conduct of Larsen and the filling of the charges, all claims of discrimination against Defendants Neubauer and Larsen should be dismissed.

With respect to Defendant Branco, Plaintiff alleges that Branco stated "Plainitff was well respected by his peers and that he thought Plaintiff would be great at being a Family Court Liason position.  Compl. ¶ 32.  Next Plaintiff alleges that Defendant Branco was intending to mislead Plaintiff and while pretending to encourage Plaintiff [sic] apply for the position he was speaking with Defendant Larsen that he wasn't going to transfer Plaintiff."  *Id*. at ¶ 35.  According to the Complaint, at the Arbitration Hearing Defendant Larsen testified that he had

---

[5] Several times in the Complaint Plaintiff alleges "[t]he charges were brought by Defendant Stephen Larsen in the Sex Offender Unit with the complete knowledge and agreement of STEPHEN LARSEN, THOMAS BRANCO, JAMES H. STITT and ANDREA NEUBAUER."  *See, e.g.,* Compl. ¶ 37, 42,44.  This conclusory allegation does not provided factual support for Plaintiff's claims.

raised the possibility of a transfer of Plaintiff with Defendant Branco and he was told to "hold off

. . . [and] instructed not to discuss this with Officer Bidot." Compl. ¶ 49. There is nothing un

these allegations to support Plaintiff's claim that the conduct of Defendant Branco was motivated

by discriminatory animus.

Finally, with respect to Defendant Stitt, Plaintiff alleges that he was told by Defendant

Stitt on two occasions that he would not be transferred because he was Spanish speaking. *Id.* at

¶¶ 28, 30. At the pleading stage, this allegation is sufficient to demonstrate personal

involvement in the constitutional depravation.

Accordingly, with respect to claims against the Individual Defendants, it is respectfully

recommended that all claims against the Individual Defendants in their official capacity be

dismissed, the all claims against Defendants Neubauer, Larsen and Branco in their individual

capacity be dismissed and that Defendants' motion to dismiss the individual claims against

Defendant Stitt be denied.

### 5. *Monell* Claims (Count III)

In Count III of the Complaint, Plaintiff alleges that the County violated the Fourteenth

Amendment, Title VII and 42 U.S.C. § 1981. Compl. ¶ 95. According to Plaintiff, "acting under

color of law, and through their employees, servants, agents and designees, have engaged in a

policy, custom, and/or condoned a longstanding practice, which has deprived Plaintiff and other

female [sic] employees of rights, privileges and immunities secured by the Fourteenth

Amendment, Title VII, and the 42 U.S.C. §1981." Plaintiff alleges that Defendants refused to

transfer Plaintiff because of his race. *Id.* at ¶ 97. Defendants argue that Plaintiff has failed to

sufficiently plead that the County had a policy or custom that caused his injuries. Def. Mem. at

10. In response, Plaintiff argues "[c]learly as a gay Latino male the County of Suffolk upheld his

removal based on false allegations which in turn permitted a 'widespread practice' of discrimination 'that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" Pl. Opp. at 24.

A municipality or municipal entity cannot be held liable under Section 1983 on a respondeat superior theory. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, a municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] . . . [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decision[]making channels." *Id.* at 690-91. "'The mere assertion [sic] that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Snall v. City of New York*, No. 00-7375, 2000 U.S. App. LEXIS 33349, at *13 (2d Cir. Dec. 15, 2000) (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993)); *see also Batista v. Rodriguez*, 702 F.2d 393, 397. The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Thus, to establish a municipal liability claim under Section 1983, Plaintiffs must show that their constitutional rights were violated as the result of a policy, custom or practice of the municipality.

To show a policy, custom, or practice for purposes of Monell, a plaintiff need not identify an expressly adopted rule. Rather, the existence of a municipal policy or custom may be plead in any of the following four ways:

> A plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

*Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 311 (E.D.N.Y. May 5, 2016). Moreover "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" *Gordon v. City of New York*, No 10-CV-5148 (CBA)(LB), 2012 U.S. Dist LEXIS 44251 at *11, 2012 WL 1068023 (E.D.N.Y. Mar. 29, 2012) (citing *Santiago v. Campisi*, 91 F. Supp. 2d 665, 676 (S.D.N.Y. 2000)).

Plaintiff has utterly failed to identify a policy or practice.  In his opposition to Defendants' motion to dismiss Plaintiff argues that County denied based on false allegations which in turn permitted a "widespread  practice" of discrimination "that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  Pl. Opp. at 24.  This conclusory allegation that the discrimination itself is the policy is insufficient.  *See Vail v. City of N.Y.,* 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.") (citations and internal quotation marks omitted); *Benacquista v. Spratt,* 217 F. Supp. 3d 588 (N.D.N.Y. 2016) ("Even at the motion-to-dismiss stage, a plaintiff cannot merely assert the existence of a municipal policy or custom in conclusory terms, but rather 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy

23

or custom exists.") (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)). Moreover, the plaintiff must produce "'some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond].'" *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002) (quoting *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992)). There is no allegation that Defendant Stitt, a principal probation officer, and the sole defendant alleged to have made a comment tying Plaintiff's tranfer to his race, was vested with policy making authority for the Department.

Accordingly, the undersigned respectfully recommends that Plaintiff's Monell claims against the County be dismissed.

### 6. Disparate Treatment (Count IV)

In Count IV, Plaintiff asserts a claim against the County claiming that he was subjected to different, disparate and abusive mistreatment, and has been treated differently than white individuals. Although Point IV of Defendants' memorandum states Plaintiff's disparate treatment claim must be dismissed, the arguments contained in that section relate entirely to Plaintiffs §1983 claims. Thus, to the extent Plaintiff's §1981 claim for disparate treatment arises out of the alleged failure to transfer, it is respectfully recommended that the motion to dismiss be denied.

### 7. ADA Claims (Count V)

In Count V, Plaintiff alleges that Defendants violated the ADA because Plaintiff was suffering from post traumatic stress disorder which is a recognized disability. Defendants contend that Plaintiff's ADA claim must be dismissed based upon his failure to exhaust administrative remedies. Def. Mem. at 19-21. Plaintiff does not respond to this argument,

conceding that his ADA claim fails because he failed to exhaust his administrative remedies.[6]

*See Bilan v. Davis*, No. 11-CV-5509 (RJS) (JLC), 2013 U.S. Dist. LEXIS 107619, 2013 WL

3940562, at *7 (S.D.N.Y. July 31, 2013) (a district court "may, and generally will, deem a claim

abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be

dismissed") (quoting *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2005)).

A plaintiff seeking to bring claims pursuant to Title VII must file a complaint with the

EEOC or equivalent state agency within 300 days of the challenged conduct." *Bowen-Hooks v.

City of New York,* 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014)(citing 42 U.S.C. § 2000e-5(e)(1)).

42 U.S.C. § 2000e-5, is also incorporated by reference into the ADA by 42 U.S.C. § 12117(a).

Accordingly, a plaintiff in New York also has 300 days from the date of accrual to file an ADA

charge with the EEOC.  *See Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999).

"These statutory filing periods are 'analogous to ... statute[s] of limitations,' and, as such, 'a

failure to timely file a charge acts as a bar to a plaintiff's action.'"  *Mercedes v. AVA Pork

Products, Inc.,* No. 13-CV-3212 JFB AKT, 2014 U.S. Dist. LEXIS 48416, 2014 WL 1369611, at

*3 (E.D.N.Y. Apr. 8, 2014)(internal citations omitted).  Moreover, "[t]he period begins to run for

each discrete discriminatory or retaliatory act when each act occurs." *Id*. (citing *Nat'l R.R.

Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).

Here, Plaintiff has failed to satisfy the requirement to file a timely EEOC charge with

respect to his alleged disability.  Plaintiff has failed to include any reference to his alleged

disability in either EEOC charge and therefore, Plaintiff is barred from raising the claim in this

---

[6] Plaintiff indirectly responds to this argument by suggesting that it is inappropriate for the Court to consider the EEOC charges in connection with Defendants' motion to dismiss.  As discussed above, this Court can judicially notice these filings and thus, this argument fails to address the authority supporting dismissal cited by Defendants.

lawsuit. Accordingly, the undersigned respectfully recommends that Plaintiff's ADA claim be dismissed.

### 8. NYSHRL Claim (Count VI)

In Count VI of the Complaint Plaintiff alleges a violation of NYSHRL against all Defendants. Defendants argue that Plaintiff's claim pursuant to the NYSHRL must be dismissed with respect to the County under the doctrine of sovereign immunity and with respect to the Individual Defendants because those Defendants can only be held liable as an aider or abettor and since no claims may be brought against the County, no claims may be brought against the Individual Defendants. Def. Mem. at 21-22. Additionally, Defendants argue that this Court should decline to exercise supplemental jurisdiction over the state law claims. *Id*. Plaintiff has not responded to these arguments. However, because the undersigned has recommended the denial of Defendants' motion to dismiss the claims against the County on the basis of sovereign immunity, it is also respectfully recommended that Defendants' motion to dismiss the NYSHRL claims be denied as well.[7]

With respect to Defendants' position that this Court should refuse to exercise supplemental jurisdiction of Plaintiff's remaining claims "a federal court should generally decline to exercise supplemental jurisdiction over state law claims, if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction and the complaint's federal claims are dismissed in the litigation's 'early stages.'" *Pelt v. City of New York*, No. 11-CV-5633, 2013 U.S. Dist. LEXIS 122848, 2013 WL 4647500, at *19 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks and citations omitted); *see Choe v. Fordham Univ. Sch. of Law*, 81

---

[7] However, to the extent the Court has recommended that Plaintiff's discrimination claims arising out of the August 2018 Charges should be dismissed, those claims must be dismissed for purposes of Plaintiff's NYSHRL claims as well.

F.3d 319, 319 (2d Cir. 1996) (holding it is clear a district court holds discretion to "decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed"); *see also* 28 U.S.C. § 1367(c)(3). Moreover, while a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks and citation omitted); *Uvidia v. Kohl's Dep't Stores*, CV 14-6028 (ARL), 2016 U.S. Dist. LEXIS 131546, 2016 WL 5390134 (E.D.N.Y. Sept. 26, 2016).

Because Plaintiff's Title VII claim against the County and certain of Plaintiff's claims against Defendant Stitt, will proceed in this Court, it is respectfully recommended that this Court retain jurisdiction over Plaintiff's state law claims against Defendants.

### D.  Leave to Replead

In his Memorandum in Opposition to the Motion to Dismiss, Plaintiff requests permission to replead in the event the Court grants the motion to dismiss.  Pl. Opp. at 25.  Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (holding "it is within the sound discretion of the district court to grant or deny leave to amend").  Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to

prevent an amendment prior to trial. *Foman*, 371 U.S. at 182. "The Federal Rules [of Civil Procedure] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 181-82 (citation and internal quotation marks omitted). Given the relatively early stages of this action, Plaintiff should be afforded the opportunity to replead his claims, other than his claim under the ADA, which should be dismissed with prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
      August 20, 2020

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge
